# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, <br><br> Defendant. <br><br> AND ALL CONSOLIDATED ACTIONS AND CROSS-ACTIONS | CASE NO. 11cv114-IEG(DHB) <br><br> Order Granting Rubio's Motion for Partial Summary Adjudication of Duty to Defend |

Presently before the Court is the Motion for Partial Summary Judgment filed by Rubio's Restaurant regarding Nationwide's duty to defend[1] on an underlying state court matter. Following full briefing and oral argument, for the reasons set forth herein, the Court GRANTS Rubio's motion.

## *Factual Background*

Rubio's is a restaurant headquartered in San Diego, California, with approximately 200

---

[1] Rubio's motion also sought summary adjudication regarding Nationwide's duty to settle the underlying action. Rubio's did not, however, contribute out-of-pocket toward the settlement. At the hearing counsel for Rubio's conceded the issue of Nationwide's duty to settle on behalf of Rubio's is moot in light of the settlement Nationwide has reached with the Insurer Plaintiffs, Fireman's Fund Insurance Company and National Union Fire Insurance Company.

restaurants located in and around Southern California. [Declaration of Heidi Bastien ("Bastien Decl.") (Doc. 67-3), ¶ 3.] Alfa Seafood International, Inc. ("Alfa") is a Florida based seafood wholesaler with customers around the United States, including Rubio's. [Declaration of Santiago Alvarez ("Alvarez Decl.") (Doc. 72-2), ¶ 6.] Nationwide ("NW") issued a general liability policy of insurance ("Policy") to Alfa which was in effect from July 14, 2008 to July 14, 2009. [Alvarez Decl., ¶ 3; Declaration of Louis Randall Iten ("Iten Decl.") (Doc. 72-3), ¶ 4; Declaration of Dan Johnson ("Johnson Decl.") (Doc. 73-4), ¶ 2; Bastien Decl., Exhibit 2.]

As part of the business relationship between Alfa and Rubio's, Rubio's requested it be named an additional insured ("AI") under the Policy, and Alfa in fact requested that Nationwide add Rubio's as an AI. [Bastien Decl., Exhibits 1 and 2.] Rubio's also maintained general commercial and umbrella insurance policies. Fireman's Fund ("FF") issued to Rubio's a primary commercial general liability policy for the period July 21, 2008 to July 21, 2009 (the "Fireman's Fund Policy"). [Declaration of Heidi Bastien in Support of Insurer Plaintiffs' Motion for Summary Adjudication ("Bastien Insurer Decl.") (Doc. 47-4), ¶ 10; Declaration of Mark Peck ("Peck Decl.") (Doc. 49-4), ¶ 11; Insurer Plaintiffs' Exhibit 27 (Doc. 54-1).] National Union Fire Insurance Company ("NUFIC") issued to Rubio's a commercial umbrella liability policy for the same time period. [Bastien Decl., ¶ 30; Declaration of Sara Thorpe ("Thorpe Decl.") (Doc. 49-6), ¶ 1; Insurer Plaintiffs' Exhibit 30 (Doc. 60-2).]

On March 4, 2009, Timothy and Tracie Sayre filed suit against Rubio's in San Diego County Superior Court, alleging Mr. Sayre suffered personal injury as a result of eating a mahi-mahi taco from Rubio's on November 20, 2008.[2] [Rubio's Request for Judicial Notice ("Rubio's RJN") (Doc. 67-5), Exhibit 1.] On January 29, 2010, Rubio's filed a cross-complaint against Alfa for equitable indemnity, comparative contribution, declaratory relief, and breach of contract, seeking recovery from Alfa in the event the Sayres recovered any damages on their complaint. [Rubio's RJN, Exhibit 2.] On February 18, 2010, without adding any substantive allegations to its complaint, the Sayres filed a "Doe" amendment naming Alfa as a defendant. [Insurer Plaintiffs'

---

[2]The Sayres filed a general California form complaint, with no details about either the particular source of the injury (fish vs. some other ingredient in the taco) or the nature of the injuries. It also did not include any information regarding Mr. Sayre's alleged injuries.

1   Exhibit 5 (Doc. 47-10).] On May 24, 2010, Alfa filed a cross-complaint against Red Chambers,
2   another supplier of fish to Rubio's, seeking indemnity, apportionment of fault, and declaratory
3   relief. [Insurer Plaintiffs' Exhibit 25 (Doc. 47-19).] On January 13, 2011, Rubio's amended the
4   cross-complaint against Alfa to allege with particularity that Alfa supplied the fish consumed by
5   Timothy Sayre, and that Alfa breached its duty to indemnify Rubio's for injuries caused by its fish
6   product. [Insurer Plaintiffs' Exhibit 24 (Doc. 47-18), ¶¶ 49-50.] The Superior Court on April 1,
7   2011 denied Rubio's and Alfa's motions for summary judgment on the Sayres' claims. [Rubio's
8   RJN, Exhibit 5 (Doc. 67-5) (court's 4/1/11 memorandum).] The court found there was a triable
9   issue of material fact regarding whether Rubio's served Mr. Sayre a defective mahi-mahi burrito,
10  whether Rubio's was negligent in selecting its fish supplier, whether Mr. Sayre's neurological
11  injuries were caused by fish poisoning, and whether the mahi-mahi Alfa sold to Rubio's was
12  consumed by Mr. Sayre.

13  Rubio's first tendered this claim to Nationwide ("NW") on January 11, 2010 under the
14  Policy. [Bastein Insurer Decl., ¶ 14; Johnson Decl., ¶ 4; Insurer Plaintiffs' Exhibit 4 (Doc. 47-9)
15  (1/11/10 tender letter).] On January 15, 2010, NW acknowledged receipt of the claim and noted
16  Rubio's had provided "very little in support of your demand that Nationwide assume your ...
17  defense." [Insurer Plaintiffs' Exhibit 8 (Doc. 47-12) (NW letter dated 1/15/10).] NW's claim
18  consultant in California, Dan Johnson, denied the tender on behalf of NW, because "[i]t remains
19  unclear whether the bodily injury alleged by plaintiffs in this instance arises out of our named
20  insured's product and/or whether any of the potentially applicable exclusions apply." [*Id.*; *see
21  also* Johnson Decl., ¶ 5.] NW asked that Rubio's provide "all discovery to date" stating it would
22  "then review the documentation and reconsider your request for defense and indemnification."
23  [*Id.*]

24  On September 14, 2010, Rubio's responded to NW's request for information. [Insurer
25  Plaintiffs' Exhibit 9 (Doc. 47-13) (9/14/10 letter from Rubio's counsel to NW).] Rubio's counsel
26  stated there was ample evidence the fish consumed by Mr. Sayre came from Alfa:

27  > [D]efense counsel for Alfa has received over two thousand pages of documents
    > through written discovery and obtained deposition testimony spanning the course of
28  > six days ... from Rubio's mostly in an effort to determine the identity of the supplier
    > of the fish Plaintiff consumed. The evidence amassed as a result of this

> painstakingly comprehensive discovery campaign initiated by Alfa's defense counsel has left no reasonable doubt that the fish consumed by Plaintiff was indeed supplied by Alfa. I have no doubt you have been competently informed of the recent developments in this regard by Alfa's counsel and will therefore forego attaching the various volumes of deposition transcripts and myriad documents pinpointing the subject fish as Alfa's.

[*Id*., p.2.] Rubio's counsel requested NW immediately undertake Rubio's defense and indemnify Rubio's in the Sayre action[3]. [*Id*., p.3.]

On October 28, 2010, NW responded, again denying the tender. [Insurer Plaintiffs' Exhibit 10 (Doc. 47-14) (10/28/10 letter from NW to Rubio's counsel).] NW stated:

> It is our opinion that Rubio's has not yet met its burden of proof in establishing that the fish consumed by plaintiff was actually supplied by Alfa International. Alfa was not Rubio's exclusive supplier, and discovery has shown that the fish could have just as likely come from another source. It is Rubio's burden to prove that the subject claim is within the basic scope of coverage afforded by the Additional Insured - Vendor endorsement. Rubio's has not been able to meet that burden based in part on its poor record keeping.
> Moreover, questions remain as to the cause of plaintiff's illness and whether or not it stems from consumption of the fish and, if so, whether the fish was contaminated after Rubio's had taken possession. Records produced to date reveal a series of Health Department violations related to improper temperatures and employees not following proper sanitation practices.
> * * *
> In conclusion, it is Nationwide's position that, based upon Rubio's inability to prove that the product at issue was in fact that of our Named Insured, Rubio's is not an additional insured under the Nationwide policy as concerns this litigation.

[*Id*., pp. 1-2.] NW did not rely on any other policy exclusion to deny Rubio's tender. [Johnson Depo., pp. 69-70.]

Alfa also tendered the Sayre Lawsuit to NW, and NW agreed to defend Alfa on the Sayre action without reservation of rights. [Johnson Depo., pp. 26-27, 94.] Rubio's also tendered the claim to its primary carrier, Fireman's Fund ("FF"), and its umbrella carrier, National Union ("NUFIC"), both of which agreed to defend. [Bastien Insurer Decl., ¶¶ 11 and 13.]

The parties ultimately reached a confidential settlement in the Sayre action. Although NW paid monies in settlement of the Sayres' action against Alfa, it did not participate in the settlement discussion on behalf of Rubio's. [Johnson Depo., p. 153.]

---

[3] NW maintained only one claims file regarding the Sayre action, which contained all the information and contacts regarding both Alfa and Rubio's tender of the claim. [Deposition of Dan Johnson ("Johnson Depo."), Insurer Plaintiffs' Exhibit A (Doc. 47-6), pp. 146, 163.]

### *Procedural History*

Fireman's Fund initially filed suit against Nationwide on December 16, 2010, in San Diego County Superior Court, seeking declaratory relief and equitable contribution with regard to the Sayre action. [Doc. 1 (Notice of Removal), Exhibit A.] Nationwide answered the complaint and filed a cross-complaint against Fireman's Fund. [Doc. 1, Exhibits C and D.] Nationwide thereafter removed the case to this Court on January 20, 2011 pursuant to 28 U.S.C. §§ 1332 and 1441(b).

On April 11, 2011, National Union filed suit against Nationwide[4] and Fireman's Fund in this Court, seeking declaratory relief regarding Nationwide's duty to indemnify Rubio's as an additional insured on the Alfa primary and umbrella policies, and the priority in coverage of Rubio's Fireman's Fund policy. [Case No. 11cv755, Doc. 1.] On February 13, 2011, Rubio's also filed suit against Nationwide for breach of contract and breach of the implied covenant of good faith and fair dealing based upon NW's failure to defend and indemnify in the Sayre action. [Case No. 778, Doc. 1.] The three actions were consolidated by stipulation of the parties on September 6, 2011.

On October 24, 2011, the parties filed amended pleadings. Rubio's and Fireman's Fund each filed a First Amended Complaint against NW. [Docs. 28 and 30.] National Union also filed a First Amended Complaint against NW and Fireman's Fund. [Doc. 31.] Finally, NW filed a First Amended Counterclaim against Fireman's Fund. [Doc. 29.] These are the operative pleadings in the case.

Both Rubio's and the Insurer Plaintiffs moved for summary adjudication of NW's duty to defend Rubio's on the Sayre action, and duty to participate in the settlement on behalf of Rubio's. The day before these motions were scheduled to be heard, however, the Insurer Plaintiffs entered into a settlement with NW, and withdrew its motions. [Doc. No. 83.] Thus, the only motion remaining for decision is Rubio's motion regarding NW's duty to defend.

---

[4] National Union named Nationwide Mutual Fire Insurance Company and Nationwide Mutual Insurance Company as defendants.

### *Legal Standard*

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. Id.; Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. See Celotex Corp., 477 U.S. at 322–23. Such an issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. See Anderson, 477 U.S. at 248, 250–51.

### *Evidentiary Objections*

The parties filed extensive objections to the evidence provided in the summary adjudication briefing, based upon lack of foundation, lack of relevance, speculation, and other evidentiary principles. The Court will not address each objection separately.

To the extent the parties argue lack of foundation for any particular piece of evidence, for purposes of summary judgment, "a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." SEC v. Phan, 500 F.3d 895, 913 (9th Cir. 2007). Furthermore, declarations containing hearsay may be admissible for summary judgment purposes so long as the evidence therein could be presented in admissible form at trial. Fonseca v. Sysco Food Services, 374 F.3d 840, 846 (9th Cir. 2004).

The Court finds the parties have provided a sufficient foundation regarding the objected-to evidence under Fed. R. Evid. 901 and 902. In addition, where statements in the declarations

1 appear to lack foundation or constitute hearsay, the Court has relied instead upon the underlying
2 evidence in ruling on Rubio's motion.  Finally, the underlying evidence from the Sayre action to
3 which Rubio's objects, including the redacted letters from Alfa's counsel and witness depositions,
4 is primarily relevant to the now-moot issue of NW's duty to settle.  The Court has not relied upon
5 this evidence in ruling upon NW's duty to defend Rubio's.  Therefore, the Court  OVERRULES
6 all of the parties' evidentiary objections.

### *Discussion*

Rubio's seeks partial summary judgment regarding NW's duty to defend it on the Sayre action.  In opposition, NW primarily argues as a matter of policy interpretation that Rubio's was not an AI within the meaning of the policy, such that there was no duty to defend.  Even if the NW policy provided Rubio's coverage, NW alternatively argues under Florida law that the four corners of the Sayres' complaint did not establish Rubio's was entitled to a defense in that action.  NW's policy interpretation and duty to defend arguments both raise conflict of laws issues.

*1.    Choice of Law Standards*

A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co, Inc., 313 U.S. 487, 496 (1941); Arno v. Club Med, Inc., 22 F.3d 1464, 1467 (9th Cir. 1994).   If there is no contractual choice-of-law provision, California generally employs a three-step "governmental interests" analysis to determine which law to apply. Washington Mutual Bank v. Superior Court, 24 Cal. 4th 906, 919 (2001); ABF Capital Corp. v. Grove Properties Co., 126 Cal. App. 4th 204, 215 (2005).  However, where the court is presented with an issue regarding the interpretation of a contract, Cal. Civ. Code § 1646 governs the choice of law determination. Frontier Oil Co. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1443 (2007).

*2.    Analysis of Conflict-of-Laws Issues*

The Court must perform a conflict-of-laws analysis with regard to (A) whether Rubio's was an AI within the meaning of the policy, and (B) whether NW had a duty to defend Rubio's in the Sayre action. See Washington Mutual, 24 Cal. 4th at 920 (the court must perform a separate conflict-of-laws analysis with respect to each issue in the case).

A.    Interpretation of NW Policy

NW argues that the primary issue in this case is one of pure contract interpretation – whether Rubio's is an AI within the meaning of the policy as a whole. There is no conflict between California and Florida law on the matter of policy interpretation. Under both California and Florida law, insurance policies are considered to be contracts subject to ordinary rules of contract interpretation. Clarendon America Ins. Co. v. North American Capacity Ins. Co., 186 Cal. App. 4th 556, 566 (2010) (court applies ordinary rules of contract interpretation in construing terms of insurance contract); American Strategic Ins. Co. v. Lucas-Solomon, 927 So. 2d 184, 186 (Fla. App. 2006) (insurance policy is a contract between the insurer and the insured, and contract principles apply to its interpretation). Where policy language is not ambiguous, it must be interpreted according to its plain meaning, giving every provision of the policy as it was written full and operative effect. Fireman's Fund Ins. Co. v. Superior Court, 64 Cal. App. 4th 1205, 1212 (1997); Barcelona Hotel, LLC v. Nova Cas. Co., 57 So. 3d 228, 230-31 (Fla. App. 2011). Any doubt as to whether a policy includes a duty to defend should be resolved against the insurer. Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1992); Rad Source Technologies v. Essex Ins. Co., 902 So. 2d 265, 265 (Fla. App. 2005). Thus, the Court may properly apply California law to decide whether Rubio's is an AI within the terms of the NW policy. See Hurtado v. Superior Court, 11 Cal. 3d 574, 580 (1974) (party seeking application of foreign law has initial burden to demonstrate a conflict); Washington Mutual, 24 Cal. 4th at 919 ("[T]he foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California."); see also Gitano Group, Inc. v. Kemper Group, 26 Cal. App. 4th 49, 56-67 (1994) (where parties disputed proper interpretation of contract terms, trial court properly declined to conduct conflicts analysis under Civ. Code § 1646 where the laws of the various states were identical).

Even if there was a material conflict of law requiring the Court to utilize Cal. Civ. Code § 1646 to determine which law to apply to the interpretation of the NW policy, California law would prevail. Under Cal. Civ. Code § 1646, a contract is to be interpreted "according to the law and usage of the place it is to be performed if the contract 'indicate[s] a place of performance' and

according to the law and usage of the place it was made if the contract 'does not indicate a place of performance'." Frontier Oil Corp., 153 Cal. App. 4th at 1443 (quoting Cal. Civ. Code § 1646).

> A contract "indicate[s] a place of performance" within the meaning of section 1646 if the contract expressly specifies a place of performance or if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances.

Id. The purpose of § 1646 "is to determine the choice of law with respect to the interpretation of a contract in accordance with the parties' intention at the time they entered into the contract." Id. at 1449.

NW argues the "place of performance" of the Policy is Florida because the policy was issued and countersigned in Florida, identifies Alfa's locations as being in Florida, and is explicitly tied to Alfa's products, which are distributed from the state of Florida. None of these facts are relevant, however, because "[a] defense obligation ... 'entails the rendering of a service, viz., the mounting and funding of a defense'." Frontier Oil Corp., 153 Cal. App. 4th at 1461 (quoting Buss v. Superior Court, 16 Cal. 4th 35, 46 (1997)). Thus, an insurer performs its duty to defend an insured "in the jurisdiction where the suit is prosecuted." Id.

Here, it can be inferred from the nature of the insurance policy, the additional insured endorsement, and its surrounding circumstances that NW would perform its contractual duty to defend both Alfa and Rubio's in California. Frontier Oil Corp., 153 Cal. App. 4th at 1461. The AIE indicates Rubio's is located in California and nothing in the AIE indicates Rubio's has any stores or operations in Florida. There is no choice of law provision in the NW policy or the AIE. As explained in Frontier Oil, it can be inferred that the parties understood and intended that any suit against Rubio's based upon its use of Alfa's product would not be filed in Florida, but in a state where Rubio's does business. If NW was called upon to defend Rubio's pursuant to the policy, that duty to defend would be performed in the location where the suit was filed.

If NW wanted Florida's law to apply uniformly to the interpretation of the policy with regard to its duty to defend under the AIE, it could have included a choice of law provision in those endorsements. NW has not explained why it would have been appropriate for its claims consultant, located in California, to apply Florida law when he was considering whether NW owed a duty to defend Rubio's in the suit filed in California arising out of operations in California.

NW argues the Court must also consider where the policy was "made" arguing the policy was "made" in Florida where it was issued and delivered to Alfa. However, under the plain language of § 1646, the place a contract was made is relevant *only* if the court cannot determine from the nature of the contract and its surrounding circumstances where the contract was intended to be performed. Cal. Civ. Code § 1646 (law and usage of the place a contract is made governs interpretation if the contract does not indicate a place of performance). Because, California law holds that an insurer's duty to defend is to be "performed" in the jurisdiction where the suit is prosecuted, the Court need go no further to inquire regarding where the contract was "made." Frontier Oil Corp., 153 Cal. App. 3d at 1461 (upon concluding California was the intended place of performance of an insurance policy's duty to defend, court did not analyze where contract was "made"). The Court's prior decision in Costco Wholesale Corp., 472 F. Supp. 2d at 1197 is distinguishable because that decision was issued prior to the California Court of Appeal's decision in Frontier Oil. The Costco Wholesale Corp. decision was based upon then-existing California case law which did not explicitly address the relationship between the two clauses of § 1646. Therefore, the Court concludes California is the place the policy's duty to defend provision is to be performed, and California law is properly applied to the issue of policy interpretation.

B.     Duty to Defend

All parties agree there is a material conflict[5] between California law and Florida law regarding how an insurer should determine whether it owes its insured a duty to defend. Again, utilizing Cal. Civ. Code § 1646 to analyze the choice of law question,[6] the Court concludes it is

---

[5] Under Florida law, the insurer determines the duty defend based upon the allegations in the complaint and the terms of the policy. National Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So. 2d 533, 536 (Fla. 1977). By contrast, under California law, the duty to defend is determined by the insurer reviewing the facts alleged in the complaint as well as any investigation and/or information available to the insurer outside the complaint. Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 276-77 (1966). In fact, in California, an insurer is required to conduct a reasonable investigation and take into consideration the extrinsic facts. Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 295 (1993).

[6] The question of whether a particular issue is one of "contract interpretation" requiring the court to use § 1646 rather than the governmental interests analysis is tricky. California cases have very narrowly construed the "contract interpretation" language of § 1646, applying the governmental interests analysis in lieu of § 1646 to issues such as the existence of a right of indemnity for punitive damages, Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc., 14

1 appropriate to apply California law. As explained above, the California Court of Appeal in
2 Frontier Oil held that an insurer performs its contractual duty to defend in the jurisdiction where
3 the underlying suit is prosecuted. 153 Cal. App. 4th at 1461. NW has offered no justification for
4 applying Florida law to determine whether NW had a duty to defend Rubio's, a California insured,
5 on an underlying suit filed in California by a California resident injured in California. Thus, the
6 Court will also apply California law to determine whether NW had a duty to defend Rubio's in the
7 Sayre action.

*3.    Did Nationwide have a duty to defend Rubio's in the Sayre action?*

Having determined California law applies, the Court will first determine whether, as a matter of policy interpretation, Rubio's was an additional insured on the NW policy. The Court will then determine whether NW had a duty to defend Rubio's based upon the facts presented in the Sayre action.

A.    Was Rubio's an Additional Insured under the terms of the Policy?

Insurance policies are considered to be contracts subject to ordinary rules of contract interpretation. Clarendon America Ins. Co. v. North American Capacity Ins. Co., 186 Cal. App. 4th 556, 566 (2010) (court applies ordinary rules of contract interpretation in construing terms of insurance contract). Where policy language is not ambiguous, it must be interpreted according to its plain meaning, giving every provision of the policy as it was written full and operative effect. Fireman's Fund Ins. Co. v. Superior Court, 64 Cal. App. 4th 1205, 1212 (1997).

---

Cal. App. 4th 637, 713 (1993), and the ability of an insurer to recover attorney fees in an action to enforce the insured's right to a defense under the policy, Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co., 103 Cal. App. 3d 198, 206 (1980). In Frontier Oil Corp., the court explicitly declined to decide whether § 1646 or the governmental interests analysis applied to the determination of an insurer's duty to defend. 153 Cal. App. 4th at 1465.

The Court believes it is most appropriate to view the issue of whether NW had a duty to defend Rubio's as a contract interpretation issue within the scope of § 1646. In determining whether there is a duty to defend, the court must examine the policy itself and the meaning of the provisions of the policy. Certain Underwriters at Lloyd's v. Superior Court, 24 Cal. 4th 945, 959 (2001) (in considering the scope of an insurer's duty to defend the insured, the court considers the provisions of the policy in their full context). In order to determine whether NW had a duty to defend Rubio's in the Sayre action, the Court will be required to look first at the language of the policy, to determine what it says about NW's duty to defend Rubio's as well as the burden on Rubio's to demonstrate it is an AI entitled to coverage. Furthermore, NW has made no effort to demonstrate application of Florida law would be appropriate under the governmental interests analysis.

> To yield their meaning, the provisions of a policy must be considered in their full context. Where it is clear, the language must be read accordingly.  Where it is not, it must be read in conformity with what the insurer believed the insured understood thereby at the time of formation and, if it remains problematic, in the sense that satisfies the insured's objectively reasonable expectations.

Buss v. Superior Court, 16 Cal. 4th 35, 45 (1997) (internal citations omitted).

A liability policy is presumed to include a duty to defend unless the carrier can introduce undisputed evidence there is no potential for coverage.  Montrose Chem. Corp., 6 Cal. 4th 287; Buss, 16 Cal. 4th at 45.  "[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity."  Horace Mann Ins. Co., 4 Cal. 4th at 1081.

> The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.

Montrose Chemical Corp., 6 Cal. 4th at 295.

NW argues, as a matter of policy interpretation, that Rubio's was entitled to coverage under the Policy only if Rubio's proved with certainty, with clear and convincing evidence, to NW's satisfaction, that Alfa's product caused injury to Mr. Sayre.  The Policy provides at SECTION 1 – COVERAGES, A.1.a as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" ... to which this insurance applies.  We will have the right and duty to defend ***the insured*** against any "suit" seeking those damages.  However, we shall have no duty to defend ***the insured*** against any "suit" for "bodily injury" ... to which this insurance does not apply ....

[Rubio's Exhibit 2, HSC001841 (emphasis added).]  SECTION II of the Policy goes on to define the persons and organizations which qualify as "an insured" under the Policy, and Rubio's does not fall within any of those defined definitions.  [Id. at HSC001848.]  However, the Additional Insured Endorsement ("AIE") states as follows:

> "**Section II – Who is an Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to below as vendor) shown in the Schedule, ***but only with respect to "bodily injury" or "property damage" arising out of "your products"*** shown in the Schedule which are distributed or sold in the regular course of the vendor's business ....

[Rubio's Exhibit 1, at HSC001813 (AIE as to Rubio's Restaurant Inc) (emphasis added).]  NW argues that because the AIE defines "an insured" by reference to whether the bodily injury arose out of Alfa's products, as a matter of policy interpretation NW had no duty to defend Rubio's

1  unless and until Rubio's came forward with definitive evidence both that Alfa was the supplier of
2  the fish, and that the fish actually caused Mr. Sayre's injury.
3      NW's argument is simply not supported by the language of the Policy or relevant case law.
4  "An exclusion from coverage otherwise within the scope of an insuring clause must be clear and
5  unmistakable to be given effect." Frontier Oil, 153 Cal. App. 4th at 1462.  More particularly, "any
6  limitations on a promised defense duty must be 'conspicuous, plain and clear'." Maryland
7  Casualty Co. v. Nationwide Ins. Co., 65 Cal. App. 4th 21, 30 (1998) (quoting Gray v. Zurich Ins.
8  Co., 65 Cal. 2d 263, 273 (1966)).  This principle "applies equally to an insured added by
9  endorsement." Id. at 31.  Thus, Rubio's was "reasonably entitled to expect the endorsement
10 included the promised defense obligation" unless the policy contained "conspicuous, plain and
11 clear" language limiting that duty. Id.
12     The Maryland Casualty Co. case cited by Rubio's is directly on point.  In that case, as here,
13 the Nationwide policy contained the following language defining the scope of the coverage and
14 duty to defend:

> We will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury" or "property damage" to which this insurance
> applies.  We will have the right and duty to defend any "suit" seeking those
> damages.

65 Cal. App. 4th at 28.  The AIE in the above policy modified the definition of "an insured" to
cover the AI, but contained the following limiting language:

> [T]his insurance with respect to such Person or Organization [i.e. the AI] applies
> *only to the extent that such Person or Organization is held liable* for your acts or
> omissions arising out of and in the course of operations performed for such Person
> or Organization by you or your subcontractor.

22 Id.  Nationwide argued this policy language meant it was obligated to defend the AI *only if* the AI
23 was "held liable" for the subcontractors' acts.  Nationwide argued it owed the AI no duty of
24 defense until liability was positively established. Id. at 30.
25     The California Court of Appeal flatly rejected NW's argument.  "The insureds were
26 reasonably entitled to expect the endorsement included the promised defense obligation because
27 there was no language expressly excluding the duty." Id.  The court rejected Nationwide's
28 argument that the policy language could be interpreted to limit the duty to defend.

> The additional insured endorsements made Nielsen an 'insured' under policies that expressly imposed a defense duty. The endorsements did not expressly or implicitly limit this defense obligation. Nationwide argues the requirement that the insurance applies "only to the extent" Nielsen is "held liable" is a clear and unambiguous statement eliminating its duty to defend Nielsen. But it is just as reasonable to view this phrase as referring only to the scope of Nationwide's indemnity obligation and limiting this obligation to situations where Nielsen is held liable for the acts of the named insured. Since a defense duty is broader than an indemnification obligation, the limitation on the scope of coverage does not eliminate the defense duty, but instead merely forms the parameters for that duty.

Id. at 31.

Here, the policy language limiting NW's coverage of Rubio's to actions "arising out of" Alfa's products cannot be read as a conspicuous, plain, clear, and unmistakable limitation on NW's duty to defend such actions. According to the testimony of NW's claims consultant, Dan Johnson, NW believed it was Rubio's duty to prove there was no dispute whatsoever on whether Alfa's product was involved in the injuries sustained by Mr. Sayre. [Johnson Depo., p. 165.] Nothing within the policy language clearly and unambiguously expresses this type of limitation on NW's duty to defend. An insurer owes to its insured a broad duty to defend against claims that create a potential for indemnity. Horace Mann Ins. Co., 4 Cal. 4th at 1081. Nothing in the NW Policy negates this broad policy and allows NW to avoid its duty to defend unless Rubio's definitively proves the underlying suit involved Alfa's product.

Even if the Court applied Florida law, the result would be the same. Under Florida law, insurance contracts are construed according to their plain meaning. Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co., 913 So. 2d 528 (Fla. 2005). If policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, such ambiguity will be resolved in favor of the insured by adopting the reasonable interpretation which provides coverage. Travelers Indem. Co. v. PCR, Inc., 889 So. 2d 779, 785-86 (Fla. 2004). " Any doubt as to whether the policy provides a duty to defend should be resolved against [the insurer]." Rad Source Technologies, Inc., 902 So. 2d at 265 (quoting Int'l Surplus Lines Ins. Co. v. Markham, 580 So. 2d 251, 253 (Fla. App. 1991)). NW relies on two cases for the proposition that the Policy, interpreted under Florida law, required Rubio's to provide conclusive proof Mr. Sayre's injuries arose out of Alfa's product before it became an "additional insured" entitled to any duty to defend. Neither are persuasive.

In <u>Hartford Accid. & Indem. Co. v. Bennett</u>, 651 So. 2d 806 (Fla. App. 1995), the court considered an additional insured clause similar to the one in the present NW policy, which provided that "an insured" included the additional insured "but only with respect to 'bodily injury' or 'property damage' arising out of 'your products' ... which are distributed or sold in the regular course of the vendor's business...." <u>Id</u>. at 807. The vendor distributed some of the primary insured's products in its store; however, the evidence was undisputed that the personal injury suffered by the plaintiff in the underlying suit was caused by a display model of a portable storage facility which the vendor neither sold nor distributed. <u>Id</u>. at 808. Unlike the present case, in the <u>Bennett</u> case there was no underlying factual dispute about the cause of the injury, and there was no potential the plaintiff's injury was caused by a product for which coverage was intended under the policy. Therefore, the <u>Bennett</u> case does not support NW's argument.

In <u>Nateman v. Hartford Cas. Ins. Co.</u>, 544 So. 2d 1026 (Fla. App. 1989), a physician sought to compel a hospital's insurer to provide him a defense to a defamation lawsuit. The hospital's policy provided in unambiguous terms that independent contractors were not covered thereunder. <u>Id</u>. at 1028. Although the underlying complaint for defamation alleged the physician made his defamatory comments while acting in his capacity as a representative, agent, or employee of the hospital, independent evidence established the physician "clearly held the status of an independent contractor." <u>Id</u>. at 1028. Thus, the question before the court was whether the physician could force the insurer to defend based upon the allegations in the underlying complaint, notwithstanding the unrebutted evidence he was an independent contractor not covered under the policy. Again, the <u>Nateman</u> case provides no support for NW's position. If discovery in the Sayre action had established *as a matter of indisputable fact* that Mr. Sayre's injuries resulted from consumption of fish from some company other than Alfa, <u>Nateman</u> would be persuasive. However, nothing in <u>Nateman</u> suggests that an insurer can avoid its duty to defend an insured under Florida law where there are disputed underlying facts and one interpretation of those facts results in the insurer having a duty to defend.

Regardless of whether the Court applies California or Florida law, nothing in the policy required Rubio's to prove with certainty, by clear and convincing evidence, that Alfa actually

1  supplied the fish before NW had a duty to defend Rubio's on the Sayre action.  Instead, according
2  to the clear language of the Policy, NW had a duty to defend Rubio's "against any 'suit' seeking ...
3  damages" for "bodily injury ... to which [the] insurance appli[ed]." [Rubio's Exhibit 2, at
4  HSC001841.]

   B.   Did NW have a duty to defend Rubio's in the Sayre action?

The remaining question is whether NW had a duty to defend Rubio's on the underlying action by the Sayres, based upon the information available to NW.  Regardless of why an insurer disputes the duty to defend, such duty exists "unless there is no potential for coverage under the policy." Amato v. Mercuty Casualty Co., 18 Cal. App. 4th 1784, 1790 (1993). "[T]he duty to defend may exist even where coverage is questionable and ultimately found lacking and any doubt must be resolved in favor of the insured. ... [T]he existence of a disputed fact determinative of coverage *establishes* a duty to defend." Id. (internal citations omittted).  On a motion for summary judgment on the insurer's duty to defend, the insurer must be able to negate coverage as a matter of law. Maryland Casualty Co. v. National American Ins. Co., 48 Cal. App 4th 1822, 1832 (1996). Once the insured makes a *prima facie* showing that the underlying action fell within coverage provided by the policy, the insurer may defeat summary judgment "only by producing undisputed extrinsic evidence conclusively eliminating the potential for coverage under the policy." Id.

Here, it is undisputed that Sayres' initial complaint filed on March 4, 2009, named only Rubio's.  However, Rubio's initial tender letter dated January 11, 2010, put NW on notice that evidence developed in the Sayre action indicated the fish in the Rubio's taco consumed by Mr. Sayre was supplied by Alfa. Rubio's stated it was alleged in the underlying action that "the fish Mr. Sayre consumed from Rubio's contained ciguatera toxin." [Insurer Plaintiffs' Exhibit 4 (Doc. 47-9).]  Rubio's further advised NW that "[b]ased on our investigation, this particular batch of Mahi fish was supplied by Alfa," citing to the production contract between Rubio's and Alfa and the purchase order for the particular batch of Mahi that Alfa supplied to Rubio's. [Id.]

NW argues Rubio's failed initially to produce any evidentiary support for its claim that Alfa supplied the fish.  Even after the initial tender was denied, NW argues Rubio's waited nine more months before it told NW to ask Alfa for the evidence supporting coverage.  What these facts

1  demonstrate, however, was that there was a factual dispute regarding the supplier of the fish, and
2  Alfa was one of the potential suppliers. On February 18, 2010, the Sayres added Alfa as a
3  defendant in the underlying action, putting NW on notice there was at least a factual dispute
4  regarding the source of the fish.[7] NW had one claims consultant working on the claims of both
5  Alfa and Rubio's, which means NW had access to all of the information being developed by Alfa's
6  defense counsel in the Sayre action. NW undertook Alfa's defense based upon the facts it received
7  from Alfa, and NW has not provided a rationale for denying Rubio's tender when it defended Alfa.
8  　　　Based thereon, the Court GRANTS summary adjudication on Rubio's claim for declaratory
9  relief that Nationwide had a duty to defend Rubio's in the Sayre action. Applying California law,
10 and bearing in mind the same claims consultant handled the claim on behalf of Alfa and Rubio's,
11 the Court concludes NW's duty arose at the time of Rubio's initial tender on January 11, 2010,
12 because the sources and evidence actually available to NW at the time of that tender demonstrated
13 Mr. Sayre's injury was potentially caused by Alfa's product. Ringler Assoc. Inc. v. Maryland Cas.
14 Co., 80 Cal. App. 4th 1165, 1184 (2000) (insurer's duty to defend is analyzed on the basis of the
15 sources and evidence actually available at the time of the tender).

### *Conclusion*

17 　　　For the reasons set forth herein, the Court GRANTS Rubio's motion for summary
18 adjudication on NW's duty to provide it a defense in the Sayre action. The Court finds NW's duty
19 arose at the time of Rubio's initial tender on January 11, 2010.

20 　　　**IT IS SO ORDERED**.
21 **DATED:  June 4, 2012**

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　**IRMA E. GONZALEZ, Chief Judge**
　　　　　　　　　　　　　　　　　　　　　**United States District Court**

---

[7]Under Florida law, an insurer's duty to defend is determined solely by the allegations of the complaint, which must set forth facts bringing the case within the coverage of the policy, with any doubt regarding coverage to be resolved in favor of the insured. Flamingo Self Storage, LLC v. Travelers Indemnity Co., 43 So. 3d 168, 170 (Fla. App. 2010). Thus, even assuming the Court should apply Florida law, as of February 18, 2010, when the Sayres added Alfa as a defendant in their action, NW would have had a duty to defend.